IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL R. BOODEN, | Case No. 21-cv-1372 |
| Plaintiff, | |
| v. | |
| BROOKFIELD PROPERTIES, | |
| Defendant. | **JURY TRIAL DEMANDED** |

## COMPLAINT AT LAW

Plaintiff, Michael R. Booden ("Booden"), by and through his attorneys, Siegel & Dolan Ltd., complains against Defendant Brookfield Properties ("Brookfield" or "Company") as follows:

### NATURE OF ACTION

1. This lawsuit arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2(a) ("Title VII"), the Illinois Human Rights Act, 775 Ill. Comp. Stat. 5/1, *et seq.* ("IHRA"), Illinois Personnel Record Review Act, 820 Ill. Comp. Stat. 40/1, *et seq.* ("IPRRA"), and the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), for Defendant's gender and disability discrimination that caused the unlawful termination of his employment, as well as unlawful retaliation against Booden for complaining about workplace gender discrimination.

### JURISDICTION AND VENUE

3. Plaintiff has fulfilled all conditions precedent to the institution of this action under Title VII, IHRA and the ADA. Plaintiff filed charges of discrimination with the Illinois Department of Human Rights ("IDHR") and the United States Equal Employment Opportunity Commission ("EEOC"). Both the IDHR and EEOC have issued notices of right to sue.

4. This matter is being filed within ninety (90) days of the notices of right to sue being issued by the IDHR and EEOC and/or being received by Plaintiff.

5. This Court has personal jurisdiction over Plaintiff because he is a citizen of Wilmette, Cook County, Illinois and worked in the State of Illinois during all relevant times.

6. This Court has personal jurisdiction over Defendant because the Company does business in the State of Illinois and its conduct in the State of Illinois underlies all claims in this suit.

7. This Court has subject matter jurisdiction of this action under 28 U.S.C. § 1331, the provisions of Title VII pursuant to 42 U.S.C. § 2000e-5(f).

8. This Court has supplemental jurisdiction over the state law claims, pursuant to 28 U.S.C. § 1367.

9. The unlawful employment practices described herein were committed within the Northern District of Illinois. Therefore, venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391(b).

## PARTIES

10. Plaintiff Booden is a citizen of the United States and a resident of Wilmette, Illinois. He worked for Brookfield in the State of Illinois as Associate General Counsel from approximately May 13, 2019 until October 13, 2019.

11. Booden is male and has been diagnosed with Crohn's disease.

12. Defendant Brookfield is a corporation doing business in the State of Illinois with its primary office located at 350 North Orleans Street, Suite 300, Chicago, Illinois 60654. Brookfield is a global real estate services company that owns, develops, and manages retail real estate encompassing over 170 shopping center and retail locations across 43 states.

13. During the timeframe relevant to these claims, Brookfield was Booden's "employer" as defined by the Title VII, IHRA, IPRRA and ADA.

## FACTUAL ALLEGATIONS

14. Booden began working for Brookfield on or around May 13, 2019 as Associate General Counsel.

15. Over the course of his employment with Brookfield, Booden performed his job well and met the Company's performance expectations.

16. Booden's immediate supervisor was Jonathan "Jack" Kanter, Senior Associate General Counsel.

17. Over the course of his employment with Brookfield, Booden met with Kanter on a weekly basis and Kanter expressed satisfaction with Booden's work performance.

18. Booden's personnel file, maintained and provided by the Company, did not contain a single negative document or anything other information indicating that Booden had engaged in inappropriate conduct.

19. Brookfield has a ping-pong table on the third floor of its office suites, which the Company intended for regular use by employees during working hours.

20. In and around July 2019, Diana Wright, Associate General Counsel, asked Booden if he would enter a ping-pong tournament with her that was being held by the Company as part of its annual summer celebration for employees.

21. On one occasion when Booden and Wright were practicing their ping-pong skills prior to the Company tournament, Mark Shanahan, V.P. and Senior Associate General Counsel, observed Booden and Wright playing ping-pong.

22. In July 2019, Wright informed Booden that Shanahan had verbally reprimanded her because she had been playing ping-pong with Booden during work hours. As Wright

described to Booden the reprimand she received from Shanahan, whose actions had the intent and purpose of creating a hostile work environment, she began to cry.

23. Booden, however, was not reprimanded by Shanahan for playing ping-pong with Wright during work hours, despite the fact that the two were playing ping-pong together.

24. In August 2019, Booden complained to Kimberly Clark, V.P., Human Resources, that Shanahan had engaged in inappropriate verbal harassment against Wright because of her sex/gender.

25. When Booden complained to Clark about Shanahan's inappropriate actions, he specifically stated he believed Shanahan's actions were directed against Wright because of her sex/gender. Clark responded in disbelief and dismissed Booden's complaint. Clark stated that "Mr. Shanahan was a long-time employee and she had never observed such conduct." Booden responded that Shanahan was new to his supervisory position and that his conduct, regardless of his tenure, was inexcusable.

26. In violation of the Company's Discrimination, Harassment & Retaliation Prevention Policy, effective December 2019 ("Discrimination Policy"), Clark failed to initiate an investigation in response to Booden's complaint of Shanahan's discriminatory reprimand of Wright.

27. On October 13, 2019, Booden was discharged from his position. Clark informed Booden of the Company's termination decision and told him it was because female employees had supposedly made allegations that Booden made "inappropriate comments" that made them feel "uncomfortable."

28. Clark further informed Booden that his discharge was "unfortunate" because it had nothing to do with his performance, which, Clark reiterated, remained satisfactory.

29. Kanter was present during the termination meeting. At no time prior to or during the termination meeting did Kanter ever inform Booden that he was dissatisfied with Booden's performance or that Booden had engaged in inappropriate conduct of any kind.

30. Although Clark stated that Brookfield had conducted an "investigation," nobody ever interviewed Booden as part of the Company's investigation. Further, Clark never informed Booden that he was the subject of an investigation, or any of the allegations made by the female employees. Nor did Clark ever give Booden the opportunity to present evidence or witnesses to refute the allegations made against him.

31. Brookfield's "investigation" into the allegations against Booden deviated from and directly contradicted with: (1) standards and best practices for employers in conducting internal investigations of alleged misconduct; and (2) Brookfield's Discrimination Policy which provides that in conducting internal investigations "the Company will promptly conduct a fair and thorough investigation into the facts and circumstances of any claim of a violation of this policy or our Equal Opportunity policy to ensure due process for all parties."

32. The Discrimination Policy further provides as follows: "During the investigation, the Company generally will interview the complainant and the accused, conduct further interviews as necessary and review relevant documents or other information. Upon completion of the investigation, the Company will determine whether this policy or our Equal Opportunity policy has been violated based upon its reasonable evaluation of the information gathered during the investigation. The Company will inform the complainant and the accused of the results of the investigation."

33. At no point did any employee complain directly to Booden with regard to any alleged "inappropriate comments" or ways that Booden made them feel "uncomfortable."

5

34. During the October 13, 2019 termination meeting, Clark refused to tell Booden what "inappropriate comments" he allegedly made, the nature of these alleged comments, which employee(s) he allegedly made them to, when he made these alleged comments, or how they allegedly constituted violations of Brookfield's Code of Conduct or Discrimination Policy.

35. Brookfield did not question the veracity or credibility of the allegations supposedly made by these female employees. Rather, Brookfield assumed the allegations to be true and explicitly told Booden that the Company found the women's allegations credible. By accepting the allegations of the female employees as unquestionably true, without informing Booden of the allegations, let alone allowing him to respond to them, Brookfield denied Booden any semblance of "due process," *i.e.*, notice and the right to be heard, in violation of its Discrimination Policy, thereby manifesting its bias against Booden based on his sex/gender.

36. An employer's failure to follow its own standard policies and procedures can give rise to an inference of pretext. *Joll v. Valparaiso Community Schools*, 953 F.3d 923, 931 (7th Cir. 2020). "Significant, unexplained or systematic deviations from established policies or practices can no doubt be relative and probative circumstantial evidence of [unlawful] intent." *Hobgood v. Illinois Gaming Bd.*, 731 F.3d 635, 645 (7th Cir. 2013).

37. Brookfield's action in discharging Booden because the Company "believed women" without any objective evidence to support the allegations, let alone providing Booden with an opportunity to respond to the allegations in violation of its Discrimination Policy, reflects the Company's bias against Booden because of his sex/gender.

38. During the termination meeting on October 13, 2019, Clark raised the issue of Booden's complaint of Shanahan's discriminatory actions and again stated that Booden's complaint about Shanahan's conduct was somehow uninformed and ill advised.

39. By referencing Booden's complaint about Shanahan's discriminatory conduct, Clark revealed that the Company's motivation to terminate Booden was retaliation for Booden's complaint of sex discrimination and harassment against Shanahan.

40. Brookfield's termination of Booden's employment violated the Company's Code of Conduct and Discrimination Policy prohibiting retaliation.

41. Furthermore, Brookfield failed to follow the Company's progressive discipline policy in discharging Booden without informing him of the allegations made by female employees and denying him the opportunity to present any evidence to rebut the allegations. Such deviation from Brookfield's Code of Conduct, Discrimination Policy, and progressive discipline policy reflects disciplinary action that is disproportionate to the alleged inappropriate acts, and also demonstrates Brookfield's discriminatory bias against Booden because of his sex/gender.

42. The EEOC states in its Enforcement Guidance that investigations of sexual harassment should be objective, fair, and complete. *See* Enforcement Guidance: Vicarious Employer Liability for Unlawful Harassment by Supervisor, 1999 WL 33305874, pp. 8-10 (June 18, 1999) ("An anti-harassment policy and complaint procedure should contain, at a minimum, the following elements…[a] complaint process that provides a prompt, thorough, and impartial investigation…[t]he employer should ensure that the individual who conducts the investigation will objectively gather and consider the relevant facts.").

43. Brookfield's decision to conduct a sham investigation that was not objective, fair, and complete, and which failed to provide Booden with the same right that it accorded women, namely, to provide evidence regarding the alleged misconduct, demonstrates Brookfield's bias against Booden because of his sex/gender.

## COUNT I
## TITLE VII GENDER DISCRIMINATION – TERMINATION

44. Plaintiff incorporates Paragraphs 1- 43 as though fully stated herein.

45. Booden's gender is male and, as such, he is a member of a protected class within the meaning of Title VII.

46. By virtue of the foregoing gender-based treatment during his employment, Brookfield discriminated against Booden in violation of Title VII.

47. The Company's determination in "finding the women credible" without even speaking to Booden constitutes unlawful sex stereotyping due to his gender. *See Kelman v. Woolrich, Inc.*, No. 99 C 5814, 2002 WL 356389, at *7 (N.D. Ill. Mar. 5, 2002) (denying employer's motion for summary judgment where pretext can be inferred based on employer's statement that no investigation would be undertaken in which plaintiff could defend himself and the comment in the exit interview "You're a man, she's a woman. She's right, you're wrong" reflects a stereotype that when men are accused of sexual harassment, the charges more likely than not (if not always) are true."

48. Booden's termination was based on a discriminatory motive.

49. As a direct and proximate result of Brookfield's discriminatory conduct, Booden has suffered and continues to suffer irreparable injury and emotional distress.

50. Brookfield's discriminatory conduct against Booden in violation of Title VII was willful and outrageous, warranting the imposition of punitive damages.

WHEREFORE, Plaintiff Michael R. Booden respectfully requests that this Court enter a judgment:

A. Declaring that the acts of Defendant in subjecting Booden to a double standard compared to female employees, as set forth herein, constitute unlawful discrimination in violation of Title VII;

B. Enjoining and permanently restraining these violations of Title VII;

C. Directing Defendant to take such action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Booden's or other employees' employment opportunities;

D. Awarding Booden any lost wages, including back pay, front pay, and lost benefits, including any lost benefits that would otherwise have been available to Booden without the Company's discriminatory conduct;

E. Awarding Booden compensatory and punitive damages for Defendant's violation of Title VII, in amounts to be determined at trial;

F. Awarding reasonable attorneys' fees and costs incurred by Booden in connection with the instant action; and,

G. Awarding Booden such further and additional relief as the Court may deem just and proper.

## COUNT II
## TITLE VII – RETALIATION

51. Plaintiff incorporates Paragraphs 1- 43 as though fully stated herein.

52. At the time of his termination, Booden was meeting the performance expectations of his employer.

53. Booden's complaint about gender discrimination constitutes protected activity. *See CBOCS West, Inc. v. Humphries*, 533 U.S. 442, 452 (2008) (finding that employee was protected from retaliation taken by employer with regard to his complaints that another employee was subjected to unlawful discrimination).

54. Shortly after Booden engaged in protected activity by complaining about discrimination, Brookfield retaliated against him by conducting a flawed and inadequate investigation and terminating his employment.

55. In terminating Booden, the Company failed to follow its own policies, procedures, and practices regarding conducting internal investigations and progressive discipline.

9

56. By virtue of the foregoing, Brookfield retaliated against Booden in violation of Title VII.

57. As a direct and proximate result of Brookfield's retaliation, Booden has suffered and continues to suffer irreparable injury and emotional distress.

58. Brookfield's retaliatory conduct against Booden in violation of Title VII was willful and outrageous, warranting the imposition of punitive damages.

WHEREFORE, Plaintiff Michael R. Booden respectfully requests that this Court enter a judgment:

A. Declaring that the acts of Defendant in terminating Booden, as set forth herein, constitute unlawful retaliation in violation of Title VII;

B. Enjoining and permanently restraining these violations of Title VII;

C. Directing Defendant to take such action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Booden's or other employees' employment opportunities;

D. Awarding Booden any lost wages, including back pay, front pay, and lost benefits, including any lost benefits that would otherwise have been available to Booden without the Company's discriminatory conduct;

E. Awarding Booden compensatory and punitive damages for Defendant's violation of Title VII, in amounts to be determined at trial;

F. Awarding reasonable attorneys' fees and costs incurred by Booden in connection with the instant action; and,

G. Awarding Booden such further and additional relief as the Court may deem just and proper.

## COUNT III
## IHRA GENDER DISCRIMINATION – TERMINATION

59. Plaintiff incorporates Paragraphs 1- 43 as though fully stated herein.

60. Booden's gender is male and, as such, he is a member of a protected class within the meaning of the IHRA.

61. By virtue of the foregoing gender-based treatment during his employment, Brookfield discriminated against Booden in violation of the IHRA.

62. The Company's determination in "finding the women credible" without even speaking to Booden constitutes unlawful sex stereotyping due to his gender.

63. Booden's termination was based on a discriminatory motive.

64. As a direct and proximate result of Brookfield's discriminatory conduct, Booden has suffered and continues to suffer irreparable injury and emotional distress.

WHEREFORE, Plaintiff Michael R. Booden respectfully requests that this Court enter a judgment:

    A. Declaring that the acts of Defendant in subjecting Booden to a double standard compared to female employees, as set forth herein, constitute unlawful discrimination in violation of the IHRA;

    B. Enjoining and permanently restraining these violations of the IHRA;

    C. Directing Defendant to take such action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Booden's or other employees' employment opportunities;

    D. Awarding Booden any lost wages, including back pay, front pay, and lost benefits, including any lost benefits that would otherwise have been available to Booden without the Company's discriminatory conduct;

    E. Awarding Booden compensatory damages for emotional harm and mental suffering, in an amount to be determined at trial;

    F. Awarding reasonable attorneys' fees and costs incurred by Booden in connection with the instant action; and,

    G. Awarding Booden such further and additional relief as the Court may deem just and proper.

## COUNT IV
## IHRA – RETALIATION

65. Plaintiff incorporates Paragraphs 1- 43 as though fully stated herein.

66. At the time of his termination, Booden was meeting the performance expectations of his employer.

67. Booden's complaint about gender discrimination constitutes protected activity.

68. Shortly after Booden engaged in protected activity by complaining about discrimination, Brookfield retaliated against him by conducting a flawed and inadequate investigation and terminating his employment.

69. In terminating Booden, the Company failed to follow its own policies, procedures, and practices regarding conducting internal investigations and progressive discipline.

70. By virtue of the foregoing, Brookfield retaliated against Booden in violation of the IHRA.

71. As a direct and proximate result of Brookfield's retaliation, Booden has suffered and continues to suffer irreparable injury and emotional distress.

WHEREFORE, Plaintiff Michael R. Booden respectfully requests that this Court enter a judgment:

    A. Declaring that the acts of Defendant in terminating Booden, as set forth herein, constitute unlawful retaliation in violation of the IHRA;

    B. Enjoining and permanently restraining these violations of the IHRA;

    C. Directing Defendant to take such action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Booden's or other employees' employment opportunities;

    D. Awarding Booden any lost wages, including back pay, front pay, and lost benefits, including any lost benefits that would otherwise have been available to Booden without the Company's discriminatory conduct;

E.     Awarding Booden compensatory damages for emotional harm and mental suffering, in an amount to be determined at trial;

F.     Awarding reasonable attorneys' fees and costs incurred by Booden in connection with the instant action; and,

G.     Awarding Booden such further and additional relief as the Court may deem just and proper.

## COUNT V
## ILLINOIS PERSONNEL RECORD REVIEW ACT

72.     Plaintiff incorporates Paragraphs 1- 43 as though fully stated herein.

73.     Following his termination, and prior to litigating this matter, Booden requested a copy of his file, pursuant to the IPRRA.

74.     The IPRRA requires employers, when providing a copy of an employee's personnel file, to include any documents relied upon by an employer to discharge an employee. 820 Ill. Comp. Stat. 40/2.

75.     The IPRRA further states that "[p]ersonnel record information which was not included in the personnel record but should have been as required by this Act ***shall not be used by an employer in a judicial or quasi-judicial proceeding***...Material that should have been included in the personnel record shall be used at the request of the employee." 820 Ill. Comp. Stat. 40/4 (emphasis supplied).

76.     Brookfield provided a copy of Booden's personnel file on November 27, 2019. However, no documents indicating anything negative about Booden were included in the file. Specifically, Brookfield failed to provide any of Clark's investigation notes that the Company relied upon to make its termination decision.

77.     Yet, Brookfield provided Clark's investigation notes to the IDHR investigator to support the Company's arguments with regard to the unlawful discrimination and retaliation claims at issue.

78. By virtue of the foregoing, Brookfield's violation of the IPRRA was willful and knowing.

79. As a direct and proximate result of Brookfield's violation of the IPRRA, Booden has suffered and continues to suffer irreparable injury.

WHEREFORE, Plaintiff Michael R. Booden respectfully requests that this Court enter a judgment:

A. Barring the use of any documents not provided in Booden's personnel file in this proceeding.

B. Declaring that the acts of Defendant in excluding certain documents from Booden's personnel file, as set forth herein, constitute a violation of the IPRRA;

C. Directing Defendant to take such action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Booden's or other employees' employment opportunities;

D. Awarding Booden his actual damages and statutory damages, plus costs, for Defendant's willful and knowing violation of the IPRRA;

E. Awarding reasonable attorneys' fees and costs incurred by Booden in connection with the instant action; and,

F. Awarding Booden such further and additional relief as the Court may deem just and proper.

## COUNT VI
## ADA DISABILITY DISCRIMINATION - TERMINATION

80. Plaintiff incorporates Paragraphs 1- 43 as though fully stated herein.

81. Since he was 11 years old, Booden has suffered from Crohn's disease. Crohn's disease is a type of inflammatory bowel disease causing abdominal pain, severe diarrhea, weight loss and malnutrition.

82. By substantially limiting Booden in performing several major life activities, including eating, sleeping, and concentrating, Crohn's disease constitutes a disability under the ADA.

83. During Booden's employment with Brookfield, the Company was aware that he suffered from Crohn's disease.

84. During the fact-finding hearing conducted by the IDHR on September 16, 2020, Brookfield revealed for the first time that Booden was discharged based on several paralegals reporting that Booden had allegedly engaged in inappropriate conduct by belching and passing gas in meetings and by "oversharing" his difficulties related to Crohn's disease. Clark testified that these complaints were memorialized in her investigation notes.

85. Clark and Kanter testified during the IDHR fact-finding hearing that in deciding to terminate Booden's employment, they relied upon the interviews of paralegals that were memorialized in Clark's investigation notes.

86. The IPRRA requires employers, when providing a copy of an employee's personnel file, to include any documents relied upon by an employer to discharge an employee. 820 Ill. Comp. Stat. 40/2.

87. Brookfield failed to provide Clark's investigation notes in Booden's personnel file provided to him on November 27, 2019.

88. On February 3, 2021, Booden received a copy of the IDHR's case file on his matter and was able to review Clark's investigation notes for the first time, which included notes from an "Employee C" that Booden "would burp and gas regularly." Further, notes from an "Employee A" indicate that a complaint was made in September 2019 about Booden "oversharing" that he had Crohn's disease during a work call in which Booden was working from home due to experiencing severe cramps related to his disability.

89. In addition, Brookfield's Position Statement submitted to the IDHR, and first made available to Booden when the IDHR produced it Investigation File on February 3, 2021, stated that Booden "regularly belched loudly and exhaled the gas in her direction and would pass

15

gas in meetings and wave a notebook behind his backside, drawing attention to the fact." As a result, "Employee C" asked Kanter (her immediate superior) that Booden's workstation, which was next to hers, be moved. When Kanter informed Booden that he had to move to a different workstation, in and around July 2019, Kanter never explained the reason why Booden had to move workstations.

    90.    Burping and uncontrollable gas are both signs and symptoms of Booden's disability.

    91.    At no point did Brookfield engage in an interactive process with Booden to discuss his disability and any accommodations that could be made.

    92.    Rather, Brookfield relied on the paralegals' complaints about Booden that specifically referenced his disability to influence the Company's decision to terminate Booden.

    93.    By relying on complaints directly related to Booden's disability to motivate, at least in some part, the Company's termination decision, Brookfield unlawfully based its decision to terminate Booden because of his disability.

    94.    By virtue of the foregoing disability-based treatment during his employment, Brookfield has discriminated against Booden in violation of the ADA.

    WHEREFORE, Plaintiff Michael R. Booden respectfully requests that this Court enter a judgment:

    A.    Declaring that the acts of Defendant in subjecting Booden to different terms and conditions of employment than non-disabled employees, as set forth herein, constitute unlawful discrimination in violation of the ADA;

    B.    Enjoining and permanently restraining these violations of the ADA;

    C.    Directing Defendant to take such action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Booden's or other employees' employment opportunities;

    D.    Awarding Booden any lost wages, including back pay, front pay, and lost benefits, including any lost benefits that would otherwise have been available to

       Booden without the Company's discriminatory conduct;

E.     Awarding Booden compensatory and punitive damages for Defendant's violation of the ADA, in amounts to be determined at trial;

F.     Awarding reasonable attorneys' fees and costs incurred by Booden in connection with the instant action; and,

G.     Awarding Booden such further and additional relief as the Court may deem just and proper.

DATED: March 11, 2021               Respectfully Submitted,

                                           MICHAEL R. BOODEN

                                           By: /s/ Marc Siegel
                                               Attorney for Plaintiff

Marc J. Siegel, #06238100
Bradley Manewith, #06280535
James D. Rogers, #06324570
Siegel & Dolan Ltd.
150 North Wacker Drive, Suite 3000
Chicago, IL 60601
Tel. (312) 878-3210
Fax (312) 878-3211
msiegel@msiegellaw.com
bmanewith@msiegellaw.com
jrogers@msiegellaw.com